IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ANN O'LEARY,** | : | |
| **Plaintiff** | : | **CIVIL NO. 1:12-CV-430** |
| **v.** | : | |
| **TODD EACHUS, Former Majority Leader of the Pennsylvania House of Representatives (Democratic), in his individual capacity only;  SUSAN SCHWAB, in her individual capacity only;  PATTI  LEES, in her individual capacity only; and  LOUISE REAVES, in her individual capacity only,** | : | **JUDGE SYLVIA H. RAMBO** |
| **Defendants** | : | |

### M E M O R A N D U M

In this § 1983 civil rights action filed by a former employee of the Democratic Caucus of the Pennsylvania House of Representatives, Plaintiff alleges that Defendants, each of whom were employees or otherwise affiliated with the Democratic Caucus, retaliated against her for exercising her First Amendment right to speak on matters of public concern.  Presently before the court is Defendants' Motion To Dismiss (Doc. 21), wherein Defendants contend that Plaintiff has failed to state a valid First Amendment retaliation claim.  For the reasons that follow, the motion will be denied.

### I.       Background

In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  The statements contained herein reflect neither the findings of fact nor the opinion of the court as to the veracity of Plaintiff's allegations.

### A.    Facts

Plaintiff, Mary Ann O'Leary, is a former employee of the Democratic Caucus of the Pennsylvania House of Representatives ("Democratic Caucus"), which consists of members of the Pennsylvania House of Representatives of Democrat registration.  (Doc. 19, Am. Compl., ¶ 12.)  Plaintiff, who began her employment as Controller with the Democratic Caucus on September 27, 1999, alleged that her employment was terminated on March 24, 2010, in retaliation for her exercising her First Amendment rights.  The basis of Plaintiff's claim arises out of her testifying or otherwise cooperating with the Pennsylvania Attorney General's criminal investigation into a "legislative scandal" (*Id.*, ¶¶ 12, 14) involving improper expenditures by the Democratic Caucus to legislative staff for work on incumbent members' campaigns (*Id.*, ¶ 16).

In the course of the Pennsylvania Attorney General's investigation, Plaintiff was represented by an attorney provided to her and paid for by the Democratic Caucus.  (*Id.*, ¶ 20.)  As a result of the investigation, during which Plaintiff was interviewed by investigators and testified before the Grand Jury fourteen times (*Id.*, ¶ 19), several "high-profile elected officials" were prosecuted for, and subsequently convicted of, their involvement in the improper allocation of public money (*Id.*, ¶¶ 15-17).  Plaintiff's cooperation with the Pennsylvania Attorney General's office in the course of the investigation was known by the members of the Democratic Caucus and Caucus leaders, including Defendants Eachus, Schwab, Lees, and Reaves.  (*See id.*, ¶¶ 20-22.)

At all times relevant to foregoing facts, each Defendant was an employee or member of the Democratic Caucus.  (*Id.*, ¶¶ 2-5.)  Defendant Todd

Eachus was the chief administrative officer of the Pennsylvania House of Representatives, and held the title of Majority Leader. (*Id*., ¶ 2.) Defendant Susan Schwab was the deputy chief of staff to Defendant Eachus. (*Id*., ¶ 3; *see also* Doc. 22*,* Defs.' Mem. in Supp. Mot. To Dismiss, at 5 n. 1 (clarifying that, despite Plaintiff's inaccurate identification of Defendant Schwab in her amended complaint, Defendant Schwab was Deputy Chief of Staff to Defendant Eachus, rather than to Representative Frank Dermody).) Defendant Patti Lees was an administrative officer to the Democratic Caucus, and was Plaintiff's immediate supervisor. (Doc. 19, ¶ 4.) Defendant Louise Reaves was the director of Human Resources for the Democratic Caucus. (*Id.*, ¶ 5.) According to Plaintiff, Defendant Eachus personally authorized the termination of her employment, but "[t]he decision . . . was made collectively by Defendants Schwab, Lees[,] and Reaves, each of whom personally participated in the decision." (*Id*., ¶¶ 24, 25.)

During the nearly ten-and-a-half years Plaintiff was employed by the Democratic Caucus, she received salary raises totaling over $23,000.00. (*Id.*, ¶¶ 12-13.) Despite her presumably positive performance, Plaintiff's employment was terminated following the disposition of several "high-profile" prosecutions brought as a result of the Pennsylvania Attorney General's investigation. (*See id.*, ¶ 23.) Specifically, on March 23, 2010, a jury found the former Democratic Whip, Michael Veon, who was a major target of the Grand Jury investigation, guilty of fourteen counts arising out of his role in the legislative scandal. (*Commonwealth v. Veon*, CP-22-CR-4656-2008 (Dauphin Cnty. Ct. Com. Pl. March 23, 2010); *see also* Doc.

19, ¶ 17; Doc. 25, Pl.'s Br. in Opp'n, at 2; Doc. 22, Ex. 1, at 3.)[1]  Plaintiff's

employment with the Pennsylvania House of Representatives was terminated on

March 24, 2010.  (Doc. 19, ¶ 23.)  Plaintiff's complaint alleges that she was

"terminated from her position in retaliation for [her] exercis[ing] . . . her rights to

spe[ak] and petition under the First Amendment" (*Id.*, ¶ 26), inasmuch as her

statements to the Attorney General and testimony to the investigating Grand Jury

were "substantial factor[s] that led to her retaliatory firing" (*Id.*, ¶¶ 29, 31).  As a

result, Plaintiff alleges that she has suffered various damages.  (*See id.*, ¶ 32.)

### B.    Procedural History

On March 8, 2012, Plaintiff filed the instant action, initially naming

nine defendants and asserting two counts.[2]  (Doc. 1, Compl.)  Plaintiff subsequently

filed a one-count amended complaint on May 29, 2012, which named the four

aforementioned Defendants, and asserted a First Amendment retaliation claim as her

sole cause of action.  (Doc. 19.)  On June 27, 2012, Defendants filed a motion to

dismiss (Doc. 21) and brief in support (Doc. 22), to which Defendants attached[3] the

---

[1] Federal Rule of Evidence 201 governs judicial notice of an adjudicative fact.  Pursuant to the Rule, the court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  While the court declines to judicially notice the date of Michael Veon's conviction by way of the news article cited in Plaintiff's brief (Doc. 25, at 8 n.1), the court takes judicial notice of the verdict at Dauphin County Court of Common Pleas docket CP-22-CR-4656-2008 (Entered March 23, 2010) (finding the defendant guilty on fourteen counts and deferring sentence).

[2] Plaintiff's original complaint included two counts.  At Count I, under 42 U.S.C. § 1983, Plaintiff alleged that her First Amendment rights were violated when her employment was terminated in retaliation for her engaging in speech on matters of public concern.  At Count II, also under 42 U.S.C. § 1983, Plaintiff alleged a conspiracy to deprive her of her First Amendment rights by firing her in retaliation for her Grand Jury testimony.  (*See* Doc. 1.)

[3] Although Plaintiff did not attach the grant jury Presentment, the document is integral to the
(continued...)

Grand Jury Presentment resulting from the Pennsylvania Attorney General's investigation (Doc. 22, at Ex. 1).  On July 31, 2012, Plaintiff filed her response in opposition (Doc. 25), in which she requested the court to take judicial notice of the date of Michael Veon's criminal conviction (*Id.*, at 8 n.1).  Defendants filed a reply on August 14, 2012.  (Doc. 26.)  Thus, the matter has been fully briefed and is ripe for disposition.

## II.        **Legal Standard**

Defendants' motion challenges Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) due to Plaintiff's alleged "fail[ure] to comply with the pleading standards of [Rule 8]," and failure to state a First Amendment claim upon which relief can be granted.  (*Id.*, ¶¶ 6, 7.)  Relying on Rule 8, Defendants argue that the amended complaint contains "nothing more than boilerplate legal conclusions" and completely lacks "properly pled allegations of Defendants' personal involvement in the alleged retaliation against [Plaintiff]." (Doc. 22, at 8.)  Defendants contend that Plaintiff's "conclusory allegations of causation" fail to establish that her involvement in the Pennsylvania Attorney General's investigation was a "substantial factor" in Defendants' decision to terminate Plaintiff's employment, and thus Plaintiff's amended complaint must be dismissed pursuant to Rule 12(b)(6).  (*Id.*, at 9, 12.)

---

(...continued)

Amended Complaint and Plaintiff explicitly relies upon the Presentment in establishing engagement in an First Amendment protected activity.  (*See generally* Doc. 19, ¶¶ 18, 19, 23, 26.) Thus, the court may consider the Presentment in evaluating the instant Motion To Dismiss.  *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3d Cir. 2010) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that a court may consider matters extraneous to the pleadings that are "integral to or explicitly relied upon in the complaint").

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When adjudicating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff, and it must grant the plaintiff the benefit of all inferences that can be derived from those facts.  *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).  However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint.  *See Reuben v. U.S. Airways, Inc.*, No. 12-2842, 2012 U.S. App. LEXIS 20598, *3-4 (3d Cir. Oct. 3, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("A complaint offering labels and conclusions or a formulaic recitation of the elements of a cause of action does not suffice") (internal quotations omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").  The court may only consider the facts alleged in the complaint, any documents attached as exhibits, matters of public record, and matters about which the court may take judicial notice.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matter of public record"); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (stating that, in addition to facts contained in the complaint, the court "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the

case"). Judicial proceedings constitute public records and courts may take judicial notice of another court's opinions. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *S. Cross Overseas Agencies v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. *Reuben*, No. 12-2842, 2012 U.S. App. LEXIS 20598 at *4 (citing *Iqbal*, 556 U.S. at 678). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Steedly v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010), the Third Circuit applied the principles of *Iqbal* and *Twombly* and set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 629 F.3d at 130. Under the test set forth in *Santiago*, the district court must initially "take note of the

elements a plaintiff must plead to state a claim." *Id.* at 130.  Next, the court should identify allegations that "are no more than conclusions" and thus, "not entitled to the assumption of truth." *Id.*  Lastly, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

## III.        **Discussion**

Plaintiff's complaint purports to state a Section 1983 cause of action for retaliation in violation of the First Amendment as a result of Defendants terminating her employment due to her testifying before the Grand Jury in the course of the Pennsylvania Attorney General's investigation of the legislative scandal. Defendants' motion argues that Plaintiff's amended complaint does not properly plead facts that sufficiently establish a claim upon which relief may be granted.

### A.        **Section 1983 Claims**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials, and provides a remedy for a public employee who has been subject to an adverse employment action as a result of his or her exercise of First Amendment rights.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To establish a claim under this section, a plaintiff must demonstrate that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).   Defendants' motion does not challenge that Defendants were acting "under color of state law" when they terminated Plaintiff's employment.  Thus, whether Plaintiff's Section 1983 claim can survive the instant motion depends upon whether she has adequately pled facts to satisfy the second element of the claim.

### B.      First Amendment Retaliation

To state a prima facie First Amendment retaliation claim, a plaintiff must allege that: (1) the activity in question is protected by the First Amendment; and (2) the protected activity was a "substantial factor" in the alleged retaliation. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006); *see also Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (dividing the cause of action into three factors);[4] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (same); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)

---

[4] Courts have divided the "substantial factor" prong into two separate elements requiring a plaintiff to allege (1) that there was an adverse employment action; and (2) that the protected activity was a substantial factor in retaliation.  Neither party contends that the termination of Plaintiff's employment establishes an adverse employment action.  Thus, whether the court employs the three-factor or two-factor framework is inconsequential for the disposition of the matter *sub judice*.

(same). The first factor is a question of law, while the second factor is a question of fact. *Hill*, 455 F.3d at 241. However, the Third Circuit instructed that the second factor in a retaliation case is properly reserved for the jury where "*genuine* questions of fact" remain unresolved. *Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005) (emphasis in original). If a plaintiff makes out a prima facie case under this test, the burden then shifts to the defendant to show that the same adverse action would have taken place "in the absence of the protected conduct." *Pollock v. City of Phila.*, No. 06-4089, 2008 U.S. Dist LEXIS 60764, *38 (E.D. Pa., Aug 7, 2008), *aff'd* 403 F. App'x 664 (3d Cir. 2010); *see also Hill*, 455 F.3d at 241 n.23.

### 1. <u>Protected Activity</u>

The court's disposition of Defendants' motion does not turn on whether Plaintiff engaged in a protected activity[5] or whether Defendants committed the conduct that Plaintiff ascribed to them, but rather whether there was a causal relationship between the two. (Doc. 22, at 9.) Therefore, the first prong of the First Amendment retaliation analysis is not implicated by Defendants' motion to dismiss.

---

[5] In their brief, Defendants concede that "[t]he speech at issue in [Plaintiff]'s Amended Complaint . . . appears to satisfy the first factor of the *Hill* test." (Doc. 22, at 9.) Furthermore, the court is satisfied that, given the content, form, and context of the statements, Plaintiff's speech was protected by the First Amendment. Plaintiff testified at the Grand Jury investigation as a citizen pursuant to a subpoena on a matter of public concern, and there is no indication that Defendants had an adequate justification for treating Plaintiff differently from other members of the general public. *See Hill*, 455 F.3d at 241 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)); *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *see also Reilly v. City of Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008) (concluding that public employee's truthful trial testimony constituted citizen speech on a matter of public concern).

## 2. <u>Substantial Factor</u>

Defendants' motion to dismiss turns on whether Plaintiff adequately
pled that her cooperation in the criminal investigation and Grand Jury testimony
were "substantial factors" in causing Defendants to terminate her employment.  In
support of their motion, Defendants argue that Plaintiff cannot establish temporal
proximity between the protected speech and her termination, as the publication of
the Grand Jury's Presentment preceded her termination by "at least one year and
nine months." (Doc. 22, at 10.)  In her response, Plaintiff argues that the March 22,
2010, conviction of the former Democratic Whip, who was a principal target of the
investigation, predates her March 24, 2010, termination by only two days, and thus
demonstrates temporal proximity.  (Doc. 25, at 7-9.)  Additionally, Plaintiff argues
that temporal proximity is only one of many ways that she can plead causation.

Determining causation for a First Amendment retaliation claim involves
an inquiry into the employer's motives and is highly context-specific.  *See Kachmar
v. Sungard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).  The absence of
immediacy does not necessarily disprove the causation factor of a prima facie case
of First Amendment retaliation.  *See Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d
892, 894 (3d Cir. 1993) ("The mere passage of time is not legally conclusive proof
against retaliation").  While "unusually suggestive" temporal proximity between the
protected activity and the adverse action, or a pattern of antagonistic conduct
subsequent to the protected activity, may be sufficient methods to establish
causation in some matters, *see e.g., Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-
21 (3d Cir. 1997) (finding sufficient causal connection based on "pattern of
antagonism"); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding

11

discharge of plaintiff two days after filing EEOC complaint to be sufficient to establish causation), they are not the exclusive methods to do so. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) (stating that "[Third Circuit] case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference"). The court may examine a "broad array" of evidence in determining whether a sufficient causal link exists between the protected activity and the adverse employment action. *See id.* at 284; *see also Deflaminis*, 480 F.3d at 267. A plaintiff can demonstrate, for instance, temporal proximity, intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence of record sufficient to support the inference of causality. *Farrell*, 206 F.3d at 279-81. It is causation, not temporal proximity or evidence of antagonism, that is an element of a plaintiff's prima facie case. *Id.* at 281. Temporal proximity or antagonism merely provides an evidentiary basis from which an inference of causation can be drawn. *Kisner v. DeFazio*, No. 07-0788, 2009 U.S. Dist. LEXIS 117160 (W.D. Pa. Dec. 16, 2009) (citing *Farrell*, 206 F.3d at 281).

In the case *sub judice*, Plaintiff has sufficiently pled that her testimony before the Grand Jury was a substantial factor in Defendants' decision to terminate her employment. Plaintiff avers that, prior to her termination, she was employed by the Pennsylvania House of Representatives for over a decade and received substantial salary increases. Plaintiff further avers that Defendants, each of whom participated in the decision to terminate her employment, were aware of her cooperation in the Attorney General's investigation, which ultimately resulted in the

convictions of several "high profile elected officials." (Doc. 19, ¶17.) Although the termination of Plaintiff's employment post-dated her Grand Jury testimony by over a year, the conviction of the second-ranking member of the Democratic Caucus occurred less than two days prior to Plaintiff's termination. Based on these allegations, the court finds that Plaintiff has demonstrated a causal relationship sufficient to survive a motion to dismiss, and has pled facts with adequate specificity to properly apprise Defendants of the basis of her First Amendment retaliation claim. Accordingly, Defendants' motion to dismiss will be denied.

## IV.      Conclusion

For the foregoing reasons, the court concludes that, when viewed in accordance with the standard appropriate when addressing a motion to dismiss pursuant to Rule 12(b)(6),  the amended complaint sets forth facts sufficient to establish that Plaintiff's Grand Jury testimony was speech protected by the First Amendment and that Plaintiff's cooperation in the Grand Jury investigation was a substantial factor in Defendants' collective action in terminating her employment. Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim will be denied.

An appropriate order will issue.

S/Sylvia H. Rambo
United States District Judge

Dated:  November 1, 2012.